**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:15CV388-RJC-DSC**


**SAMUEL LITVIN MICHAELS,**    )
        **Plaintiff,**    )
            )
    **vs.**    )    **MEMORANDUM AND RECOMMENDATION**
            )
**CAROLYN W. COLVIN,**    )
**Commissioner of Social**    )
**Security Administration,**    )
        **Defendant.**    )
_____)

> **THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and Defendant's "Motion for Summary Judgment" (document #14), as well as the parties' briefs and submissions.

> This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

> Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.


**I. <u>PROCEDURAL HISTORY</u>**

> On February 14, 2013, Plaintiff filed applications for Disability Insurance Benefits

---

[1]Pursuant to the Text-Only Social Security Scheduling Order entered on October 6, 2015, Plaintiff was entitled to file a response brief on or before March 11, 2016. Plaintiff did not file a response.

("DIB") and Supplemental Security Income Benefits ("SSI") alleging that he became disabled on January 1, 2011 due to Asperger's Syndrome, severe depression, anxiety-chest pain, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), lower back pain, and blood in his stool  (Tr. 245, 250).    The applications were denied initially and upon reconsideration. (Tr. 134-39, 144-52).    Plaintiff requested a hearing which was held on January 22, 2015.  (Tr. 51-75, 142-43).

On February 6, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 11-38).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 13).    The ALJ also found that Plaintiff suffered from major depressive disorder, anxiety disorder and a history of panic attacks, which were severe impairments within the meaning of the regulations id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18).   The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform a full range of work at all exertional levels with limitations to simple, routine, repetitive tasks, adapting to routine demands and changes inherent in a work setting, working at a nonproduction pace, rare (less than one third of the work day) interaction with the general public and co-workers, and no more than occasional interaction with supervisors (Tr. 25).

At step four, the ALJ found that Plaintiff was unable to perform any past work (Tr. 36).

The ALJ then shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform.   In response to a hypothetical that factored in the

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations."  20 C.F.R. § 404.1545(a).  The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

above limitations, a Vocational Expert ("V.E.") identified jobs as a call out operator, ticket counter, and microfilming document preparer that Plaintiff could perform.  (Tr. 37-38).

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 38)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

On August 5, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3).

Plaintiff filed the present action on August 25, 2015.  He assigns error to the ALJ's evaluations of his deficiency in concentration, persistence, and pace, and his mental impairment under §12.04 and/or §12.06 of the Listings.  Plaintiff's "Memorandum … in Support …" at 4 (document #11-1).  Plaintiff also assigns error to the ALJ's conclusion that his Asperger's Syndrome, PTSD, ADHD, and obsessive compulsive disorder (OCD) were not severe impairments. Id.  Finally, Plaintiff assigns error to the ALJ's evaluation of the opinions of his treating psychiatrists and psychologist, and her reliance on his Global Assessment of Functioning (GAF) scores.  Id.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990);  see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795

F.2d 343, 345 (4th Cir. 1986); <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

      As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In <u>Smith v. Heckler</u>, 782 F.2d 1176, 1179 (4th Cir. 1986), <u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>See also</u> <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

      The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d at 1456 (4th Cir. 1990); <u>see also</u> <u>Smith v. Schweiker</u>, 795 F.2d at 345; <u>and</u> <u>Blalock v. Richardson</u>, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION OF CLAIM

      The question before the ALJ was whether Plaintiff became disabled[3] as that term of art is

---

[3]Under the Social Security Act, 42 U.S.C. § 301, <u>et seq.</u>, the term "disability" is defined as an:

    inability to engage in any substantial gainful activity by reason of any medically determinable

defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The ALJ considered mental health assessments, including evaluations by Dr. Stephen B. Bondy (Tr. 375-86), treatment records and evaluations from Dr. Scott Gleditsch (Tr. 352-71), and a psychological evaluation from Dr. Carlo Filiaci (Tr. 386-89). The ALJ also considered a Consultative Examination (CE) report from Earl J. Epps (Tr. 336-40), a CE report from Dr. Warren J. Steinmuller (Tr. 329-34), the initial determination explanation (Tr. 89-101), the reconsideration explanation (Tr. 118-31), Plaintiff's testimony (Tr. 51-68), and the V.E.'s testimony (Tr. 68-74).

The Fourth Circuit recently held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the

---

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v.

Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir.

2013). This explicit function-by-function analysis is not necessary when functions are irrelevant

or uncontested. It is only after that function-by-function analysis has been completed that the RFC

may "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and

very heavy." Id. The ALJ's RFC determination here is supported by substantial evidence including

Plaintiff's testimony, medical records and treatment history.

Plaintiff asserts that the ALJ erred by not finding that his Asperger's Syndrome,

ADD/ADHD, OCD, and PTSD were severe impairments at step two of the sequential evaluations

process.

Under the Commissioner's regulations, "an impairment or combination of impairments is

not severe if it does not significantly limit your physical or mental ability to do basic work

activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). "At step 2 of the sequential evaluation process,

an impairment or combination of impairments is considered "severe" if it significantly limits an

individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not

severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more

than a minimal effect on the ability to do basic work activities." SSR 96-3P, 1996 WL 374181, at

*1 (S.S.A.). The ALJ considered the evidence related to the functional impact of Asperger's

Syndrome, ADD/ADHD, PTSD and OCD on Plaintiff's ability to function in a work setting (Tr.

13-14). Substantial evidence supports the ALJ's findings that all four were "not severe"

impairments (Tr. 13).

The ALJ discussed Asperger's Syndrome, defined by Dr. Bondy as a neurological disorder

characterized by odd, idiosyncratic behavior (Tr. 14, 377). Dr. Bondy stated "[t]he classic

presentation is narrow, often technical interests to the exclusion of all else" and "[s]ocial skills are often deficient" (Tr. 14, 377). The ALJ found that Plaintiff's description of his limitations from Asperger's Syndrome matched Dr. Bondy's description of the impairment (Tr. 14, 56).

The ALJ considered that despite Plaintiff's allegedly disabling Asperger's Syndrome, he graduated from high school in 1977, obtained a college degree in technical translation in 1993, performed well on the Law School Admission Test, graduated from law school in 1996, passed the New York Bar, and maintained employment (Tr. 14, 332). His earnings record indicated substantial gainful activity from 1997 until 2009, with salaries over $80,000 annually (Tr. 14, 217). The ALJ also noted that about a year after his alleged date of disability, on January 1, 2011, Plaintiff married his girlfriend of twelve years (Tr. 14, 268, 316, 330). On March 1, 2012, during a visit with Dr. Gleditsch, Plaintiff stated that he and his wife recently moved from New Jersey in order to find better job prospects (Tr. 14, 316). The ALJ found that while Plaintiff has been diagnosed with Asperger's Syndrome, his symptoms were reasonably controlled by medication and did not significantly limit his ability to do basic work activities (Tr. 15, 61). See 20 C.F.R. §§404.1521, 416.921.

The ALJ noted that Dr. Filiaci treated Plaintiff from November 2003 through November 2011 for diagnoses that included Attention Deficit Disorder (ADD). However, Dr. Filiaci did not submit any treatment records. On his initial disability report, Plaintiff stated that he took Adderall "as needed, ADHD" (Tr. 15, 252). The ALJ found that Plaintiff's symptoms were not as severe as he alleged, since he only took his medication as needed (Tr. 15). The ALJ considered Dr. Gleditsch's notation that the Plaintiff had been on Adderall, but the note did not mention ADHD (Tr. 15, 312). She also considered that on March 19, 2013, Dr. Steinmuller, the examining consultative psychiatrist, did not diagnose the Plaintiff with ADHD. Plaintiff reported past

treatment with Adderall, but he did not mention having been diagnosed with ADHD (Tr. 15, 329, 333). In a December 18, 2013 treatment note, Dr. Gleditsch observed that Plaintiff's attention and concentration were normal with some preoccupation (Tr. 15, 354). The ALJ noted a period of time when Plaintiff did not take Adderall around November 2011. He also failed to include it on his list of medications provided to Dr. Gleditsch (Tr. 16). The ALJ found that Plaintiff's symptoms, which he sporadically treated with Adderall, were reasonably controlled by and/or did not require psychotropic medication and did not significantly limit his ability to do basic work activities (Tr. 16). Thus, substantial evidence supports the ALJ's finding that Plaintiff's ADHD was a "non-severe" impairment. 20 C.F.R. §§ 404.1521, 416.921.

Dr. Filiaci reported that the Plaintiff exhibited OCD symptoms including compulsive teeth brushing, checking on doorknobs, and walking in certain patterns (Tr. 16. 387). However, the ALJ noted that during Dr. Steinmuller's psychiatric consultative examination, Plaintiff complained of Asperger's Syndrome, severe depression, PTSD, ADHD and back pain, but not OCD (Tr. 16, 329). When Dr. Steinmuller asked Plaintiff about his OCD, he reported having rituals prior to being placed on medication (Tr. 16, 331). The ALJ found that the Plaintiff had a past history of OCD but had not been diagnosed with it since 2011. Plaintiff reported to Dr. Filiaci that before moving to North Carolina, his symptoms were controlled by medication (Tr. 16, 329). Accordingly, the ALJ found Plaintiff's OCD symptoms were controlled by medication and did not significantly limit his ability to do basic work activities (Tr. 16). She properly found that his OCD was a "non-severe" impairment. 20 C.F.R. §§ 404.1521, 416.921.

The ALJ also properly found that Plaintiff's alleged PTSD was a non-severe impairment (Tr. 16). Dr. Filiaci opined that Plaintiff's PTSD began when he was psychologically and physically abused as a child (Tr. 16, 387). Dr. Gleditsch noted that Plaintiff had a "history of

PTSD" (Tr. 16, 308). Plaintiff reported to Dr. Steinmuller that he grew up in the Ukraine with a physically and emotionally abusive father and aunt (Tr. 17, 331). His father brought him to the United States, leaving his mother behind. Id. Plaintiff's mother later committed suicide. Id. Plaintiff reported he was that "destructed [sic] by not having a chance to go bond with [his] mother," but he did not report nightmares, flashbacks or triggering events. Id. The ALJ found that Plaintiff obtained advanced degrees, passed a bar exam, and secured employment during the time he was diagnosed with PTSD (Tr. 17). Substantial evidence supports the ALJ's findings here and the step two finding should be affirmed.

Plaintiff challenges the ALJ's step three finding, contending she erred in rejecting Doctors Gleditsch, Bondy and Filiaci's opinions that his mental impairments met or equaled §12.04 and/or §12.06 of the Listings. More generally, Plaintiff alleges that the ALJ erred by not giving great weight to these doctors' opinions that he is disabled. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

As discussed above, the ALJ thoroughly considered the medical records, as well as Plaintiff's personal, professional and educational history. Although the record contains some treatment notes from Dr. Gleditsch, there are no treatment notes from Dr. Bondy or Dr. Filiaci. Each of these doctors completed

a "check the box" type evaluation form. (Tr. 375-388). As the ALJ stated, these opinions are entitled to little weight because they are not supported by objective evidence in the record as required under 20 C.F.R. §§ 404.1527, 416.927. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Shelton v. Colvin, 2015 WL 1276903, at *3 (W.D.VA., Mar. 20, 2015) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993)(As we pointed out in discussing "residual functional capacity reports," where these so-called "reports are unaccompanied by thorough written reports, their reliability is suspect....")).

Substantial evidence supports the ALJ's finding that the Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any contained the Listings (Tr. 18). In order to meet the requirements of the Listings, the claimant must satisfy all of the elements of the listed impairment. See 20 C.F.R. §§ 404.1525(d), 416.925(d); Sullivan v. Zebley, et al., 493 U.S. 521, 530 (1990); Lewis v. Bowen, 823 F.2d 813, 815-18 (4th Cir. 1987). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530. Additionally, a claimant has the burden of proving that his condition meets or equals a Listing. Pass v. Chater, 65 F.3d

1200, 1203 (4th Cir. 1995). The ALJ specifically considered Listing 12.04[4] and Listing 12.06.[5] She gave

substantial weight to the opinions of the State agency psychological consultants, Doctors April L. Strobel-

Nuss and Betty V. Aldridge (Tr. 18-19, 89-101, 118-131). On April 11, 2013, Dr. Strobel-Nuss opined

that a medically determinable impairment was present but did not precisely satisfy the diagnostic criteria

of Listings 12.04 and 12.06 (Tr. 93-4). On July 9, 2013, Dr. Aldridge also opined that a medically

determinable impairment was present but did not precisely satisfy the diagnostic criteria of Listings 12.04

---

4To meet listing 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied. Relevant here: A. Medically documented persistence, either continuous or intermittent, of one of the following: 1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration; OR C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Ch. III Pt. 404, Subpt. P. App. 1 §12.04

5In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied. A. Medically documented findings of at least one of the following: 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or 4. Recurrent obsessions or compulsions which are a source of marked distress; or 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. OR C. Resulting in complete inability to function independently outside the area of one's home. 20 C.F.R. Ch. III Pt. 404, Subpt. P. App. 1 §12.06.

and 12.06 (Tr. 124). Both opined that Plaintiff had moderate difficulties in maintaining social function, and in concentration, persistence or pace, with no episodes of decompensation (Tr. 19, 89-101, 118-131). The ALJ gave significant weight to Dr. Aldridge's opinion that the Plaintiff has a mild restriction in activities of daily living rather than Dr. Strobel-Nuss's assessment of a moderate restriction in this area for the reasons discussed below. Id.

To satisfy "paragraph B" of Listings 12.04 and/or 12.06, Plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration (Tr. 18). See 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1 §12.00C. Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not cause at least one "marked' limitation or one "marked' limitation and "repeated" episodes of decompensation of extended duration. Therefore the "paragraph B" criteria are not satisfied.

The ALJ also found that the evidence fails to establish the criteria for "paragraph C" (Tr. 20). Based upon Plaintiff's function report, his wife's third party function report, and medical observations concerning his appearance and activities, the ALJ found that Plaintiff had mild restriction in his activities of daily living (Tr. 19, 268-283). Plaintiff's wife stated that he takes in the mail, helps with household chores, runs errands, drives himself, and shops in stores and on line (Tr. 19, 269-270). Plaintiff reported he is capable of walking and driving a car alone, enjoys reading, and visits the library. He occasionally has to be reminded about his personal hygiene, but maintains it by himself. (Tr. 19, 276-283). Plaintiff also reported that he takes his medication, makes simple meals, sweeps, takes out the trash and changes light bulbs. Id. On March 19, 2013, Dr. Steinmuller opined that Plaintiff looked older than his stated age, appeared nervous, was casually dressed, and had a short trimmed beard (Tr. 19, 329). On January 15, 2015, Dr. Bondy observed that Plaintiff appeared on time for his interview and was appropriately dressed

(Tr. 19, 375-376). Substantial evidence supports the ALJ's finding that the Plaintiff has mild restriction of his activities of daily living (Tr. 19).

Substantial evidence also supports the ALJ's finding that Plaintiff has moderate restrictions in social functioning and concentration, persistence or pace. Plaintiff married his longtime girlfriend in January 2012 following his alleged onset date of January 1, 2011 (Tr. 19, 268-69). Plaintiff reported that he talks on the phone with a friend weekly and infrequently emails (Tr. 19, 280). Plaintiff reported he is capable of driving a car, going out by himself, taking walks, visiting the library, browsing the internet, shopping on line, watching movies and reading (Tr. 19, 280-81). Dr. Steinmuller opined that Plaintiff interacted in a somewhat nervous fashion with somewhat excessive circumstantial presentation of information (Tr. 19, 333). He also found Plaintiff was oriented to person, place, day, time and purpose and that he was capable of correctly performing tests for memory, concentration and recall. Id. Dr. Gleditsch opined that Plaintiff's memory and concentration were "okay to normal" (Tr. 20, 308, 312).

The ALJ also found that Plaintiff experienced no extended episodes of decompensation. (Tr. 20). Plaintiff has not been in psychotherapy since at least August 2013. Prior to that, he attended outpatient psychotherapy. Id. He has not had any inpatient psychiatric hospitalizations. Id.

For those reasons, substantial evidence supports the ALJ's finding that the Plaintiff's impairments do not satisfy the "paragraph B" or "paragraph C" criteria. Thus, substantial evidence supports the ALJ's finding that the Plaintiff's impairments do not meet or medically equal listings 12.04 or 12.06 (Tr. 18).

The ALJ found that the opinions of Doctors Gleditsch, Bondy, and Filiaci were not supported by objective medical evidence (Tr. 21-25). The ALJ found that Dr. Gleditsch's opinions were refuted by his own treatment notes. (Tr. 21-22). Dr. Filiaci's opinions were "unaccompanied by supporting medical evidence." (Tr. 22). In addition, the ALJ discussed Dr. Bondy's method of evaluation. Dr. Bondy

reviewed medical records from Dr. Gleditsch, a psychiatric evaluation by Dr. Steinmuller, and notes from the C.T. Williams Health Center, but performed no testing to assess Plaintiff's limitations (Tr. 23-24). Dr. Bondy did not cite to the medical records with specific dates and findings to substantiate any restrictions. He simply checked a box on a form (Tr. 24). None of the treating source opinions submitted by Plaintiff were supported by objective medical evidence as required. The ALJ further found that the opinions expressed by Plaintiff's treating sources were inconsistent with the opinion of the consultative psychiatrist Dr. Steinmuller (Tr. 24). SSR 96-2P, 1996 WL 374188, at *2 (S.S.A.). The ALJ's findings as to the treating source opinions were supported by substantial evidence and Plaintiff assignments of error should be overruled.

Plaintiff alleges that the "ALJ's reliance upon claimant's GAF scores as a basis for denying benefits in the present case was erroneous and warrants a remand." The ALJ did not use the GAF scores to deny benefits. The ALJ properly considered the inconsistency between the form completed by Dr. Gleditsch and the GAF score. For example, when discussing the assessment completed by Dr. Gleditsch, the ALJ said:

> [I]n a check-the-box medical source statement, provided by the claimant's attorney, Scott Gleditsch, M.D., a board psychiatrist, checked that the claimant has marked restriction of activities of daily living, marked difficulties in maintaining social function, marked difficulties in maintaining concentration, persistence or pace and a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

(Tr. 21, 357). She then compared these restrictions to Dr. Gleditsch's GAF score as follows:

> Furthermore, the claimant's global assessment functioning, or GAF scores have been assessed by Dr. Gleditsch, a psychiatrist, in March 2012, July 2012, and October 2012 as 60, indicating moderate symptoms, notably the GAF scale for moderate symptoms is 51-60, so the claimant just fell within the moderate instead of mild category (Tr. 21, 310, 312, 318). It was not until August 2013 notwithstanding, Warren J. Steinmuller, M.D., the examining consultative psychiatrist, opinion that his GAF score was 50-55, that Dr. Gleditsch opined that the claimant's GAF score was 50, indicating moderate symptoms (Tr. 21, 355). Furthermore, Dr. Gleditsch assessed his GAF score in December 2013,

> May 2014 and September 2014 as 50, consistently indicating moderate symptoms (Tr.
> 21, 352, 355, 365, 367). Notably, Dr. Gleditsch in March 2012, July 2012, and October
> 2012 noted that the claimant reported that he was seeing Mark Perkins for therapy and
> during this period of time his GAF scores was assessed as 60 (Tr. 310, 312).

(Tr. 21-22). Simply put, the ALJ found that the GAF score was inconsistent with the restrictions indicated on the form.

Finally, Plaintiff assigns error to the ALJ's use of the V.E.'s testimony which was based in part on an RFC restriction to "simple, routine, repetitive tasks … performing work in a nonproduction pace rates...." (Tr. 25). In <u>Mascio</u>, <u>supra</u>, the Court "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). <u>See also</u> SSR 96-8p (where ALJ completes Psychiatric Review Technique Form ("PRTF"), mental RFC evaluation for use at steps 4 and 5 "requires a more detailed assessment by itemizing various functions … summarized on the PRTF"). "The ability to perform simple tasks differs from the ability to stay on pace. Only the latter limitation would account for a claimant's limitation in concentration, persistence or pace." <u>Id.</u> In this case, the ALJ found that Plaintiff has a moderate limitation in concentration, persistence or pace. Consistent with <u>Mascio</u>, the ALJ limited the RFC not only to simple routine repetitive tasks but also to "work in a nonproduction pace rates...." (Tr. 25). The ALJ properly accounted for that limitation and Plaintiff's assignment of error in this regard should be overruled.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist</u>, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." <u>Mickles v. Shalala</u>, 29 F.3d 918, 923 (4th Cir. 1994)  (citing <u>Simmons v. Bowen</u>, 834 F.2d 635, 640 (7th Cir. 1987)).   This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV.  <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V.  <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.   Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.

1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: March 25, 2016

David S. Cayer
United States Magistrate Judge